RACHAEL A. AXLINE, BY HER NEXT FRIEND, ETC., ET AL., APPELLANTS, VS. J. R. SHAW, APPELLEE.

1. The land below high-water mark does not necessarily pass to a grantee of the upland as an incident and appurtenance of the latter, but the submerged land or any part thereof may be re-

served upon a sale of the upland, or be made the subject of a separate sale, or be sold with the upland, the question of the intent of the grantor, that the submerged land or any part thereof shall or shall not pass with the upland, being one, the solution of which is to be found in the terms of the deed of conveyance.

2. Our riparian act of December 27th, 1856, is by its terms expressly limited to those persons and corporations "owning lands actually bounded by and extending to low-water mark on such navigable streams." In order for one to have riparian rights there must be an actual water boundary of the land in connection with which such rights are claimed.

3. As applied to inland waters, the word "shore" generally has application only to large bodies of water, as lakes and large rivers, and mean the land adjacent thereto.

4. The deed under which riparian rights are claimed in this case extends the complainants' lands "to the shore of Orange Lake." Such a boundary upon "the shore" is not an equivalent term to a boundary upon the lake itself, or the waters thereof. Such a boundary is land and not water, and does not confer riparian rights under our statute.

5. The submerged lands of Orange Lake, in Alachua county, which were private property at the time of the passage of the riparian act, being included in the grant of the Spanish government to F. M. Arredondo and son, before the cession of Florida to the United States, were not affected by the provisions of that act.

Appeal from the Circuit Court for Alachua county.

The facts of the case are stated in the opinion of the court.

S. Y. Finley, for Appellants.

Thos. F. King and W. W. Hampton, for Appellee.

LIDDON, J.:

Appellants, who were complainants below, filed their bill of complaint against the appellee (defendant below). The bill alleged, among other things, that the

complainant, Rachael A. Axline, was a riparian proprietor of a certain lot of land in Alachua county, which "is fronted by Orange Lake, which is a navigable stream." Said bill also alleged that said lot abuts upon the said lake; that said lake adjoins the same, and that said complainant was entitled as riparian owner to exclusive water privileges under, upon and over the waters of the said lake adjoining and in front of her said property; and that said lot was purchased with a view to said water rights and privileges. The bill charged the defendant with erecting a fence and attempting to erect a wharf in front of her land, which prevented access to the channel of the lake, interfered with her use of said water privileges and facilities for navigation, shipping freight and other purposes.

An injunction was prayed against the keeping, using, repairing, etc., of the fence already built, and from building any other fence, wharf, etc. The building, etc., of the fence was not sought to be enjoined as a nuisance *per se*, but the complainants stand strictly upon the statutory riparian rights of Mrs. Axline.

The defendant filed his answer and demurrer, in one paper, denying that the complainant, Mrs. Axline, was a riparian proprietor; that Orange Lake was a navigable stream in contemplation of the statute, and many other matters unnecessary to state. Voluminous testimony was taken by each party. At the final hearing the bill of complaint was dismissed and complainants appealed.

The counsel for both parties have filed lengthy briefs evincing much labor and research upon the question as to whether or not Orange Lake, an inland fresh water lake in Alachua county, is a "navigable stream" within the purview of our riparian act of December 27th, 1856. The conclusion we reach renders it en-

tirely unnecessary to determine the question, because,. in our opinion, if we conceded that said lake is such a: "navigable stream" as is contemplated by the act, we do not think the allegations and proof in the case show that the complainant, Mrs. Axline, is such a riparian owner as is embraced within the terms of the statute. It appears by the testimony in the case that one T. B. Myers, through whom Mrs. Axline derived title, at the time he sold and conveyed the lots on account of which she claims to be a riparian proprietor, also owned the adjacent submerged lands covered by the waters of Orange Lake. Conceding (only, however, for the purposes of this case) that Orange Lake is a navigable stream, and that the submerged lands over which riparian rights are claimed, were included in the statutory grant made by the act of 1856, does the deed of conveyance to Mrs. Axline make her a riparian proprietor? A solution of the question requires an examination of a portion of the act and the deed by which Mrs. Axline holds her title to the property in question. The last section of the act in question is as follows: "That nothing in this act contained shall be so construed as to release the title of the State of Florida, or any of its grantees, to any of the swamp or overflowed lands within the limits of the same, but the grant herein contained shall be limited to those persons and body corporate owning lands actually bounded by, and extending to low water-mark, on such navigable streams, bays and harbors." Chapter 791, sec. 2; McClellan's Digest,. sec. 2, p. 690. The description of the land in the deed of Mrs. Axline is as follows: Beginning at the northeast corner of section one (1), township twelve (12), south of range twenty-one (21), in the Arredondo Grant, thence south with the east line of said section:

one (1) a distance of ten chains, thence west on a line parallel with the north line of said section one (1) about thirty-six and a half chains to the shore of Orange Lake, thence north-westerly with said shore of said lake to the north line of said section one (1), thence with said north line of said section about forty chains, to the place of beginning, containing by estimation thirty-eight and 25-100 (38 25-100) acres, and composing lots one (1) and two (2) on the map of Kennedy's survey of said section, or of the land of Theodorus Bailey Myers and wife.

A principle applicable to the construction of this deed is stated in State vs. Black River Phosphate Co., 32 Fla. 82, text 90, 13 South. Rep. 640, text 643, in summarizing the effect of the decision in Rivas and Koopman vs. Solary, 18 Fla. 122, as follows: "The land below high water-mark does not necessarly pass to grantee of the upland as an incident and appurtenance of the latter, but the submerged land, or any part thereof, may be reserved upon a sale of the upland, or be made the subject of separate sale, or be sold with the upland, the question of the intent of the grantor that the submerged land, or any part thereof, shall or shall not pass with the upland being one of which the solution is to be found in the terms of the deed of conveyance." Numerous authorities are cited in support of the proposition asserted. Some of these are referred to and quoted in the further course of this opinion. This court has also laid down the proposition that in a suit to enjoin trespass upon riparian rights, the allegations of the bill must be clear and precise as to the title upon which relief is prayed. These requirements of clearness and precision have especial application to statements as to boundaries of the land upon the ownership of which riparian rights are claimed. Sullivan vs.

Moreno, 19 Fla. 200, text 223.  The act in terms is expressly limitted to those persons and corporations "owning lands actually bounded by and extending to low water-mark, on such navigable streams."  In order for one to have riparian rights there must be an actual water boundary of the land in connection with which such rights are claimed.  Sullivan vs. Moreno, *supra*.  Examining Mrs. Axline's deed, does it show a water boundary?  One of the boundaries of her land is the shore of Orange Lake.  In conveyancing, the word "shore," as applied to the sea and to tidal waters, has a definite and generally understood signification.  It means that portion of land at the water's edge which is daily covered, and daily left bare by the rising and falling of the tides.  Gould on the Law of Waters, secs. 3, 28; Black's Law Dictionary, *title* Shore; Storer vs. Freeman, 6 Mass. 435, text 439, S. C. 4 Am. Dec. 155.  As applied to inland waters, so exact a definition can not be given.  The word generally has only application to large bodies of water, as lakes and large rivers, and mean the land adjacent thereto.  Webster's International Dictionary.  If a boundary upon "the shore" of the lake is an equivalent term to a boundary upon the lake itself, or the waters of the lake, then Mrs. Axline is a riparian proprietor; otherwise she is not.  We do not think the expressions are equivalent.  Her land is bounded by "the shore." The shore is land.  The word "shore" is an antithetic term to that of "water."  Their significations, instead of being synonymous, are the opposites of each other. Therefore the boundary is land, and not water.  Her land being bound by the shore of the lake, the idea is excluded that it is bounded by the lake itself, or the waters thereof.  The deed of Mrs. Axline does not even convey the shore.  It conveys "to the shore."  A

deed conveys all within the boundaries, but does not convey the boundary itself. Gould on the Law of Waters, sec. 199. An early American case upon this subject is Storer vs. Freeman, *supra*, in which it is said: "The present question is, therefore, a question upon the construction of the deeds of conveyance. The lands are not expressly bounded on the sea or salt water; but they extend to the sea-shore, and are bounded by it; which, as the plaintiff has argued, are expressions of the same import." The court then proceeded to define *shore* and *sea-shore*, and then continued: "The shore mentioned in the deed is not covered with rock, but forms a beach or flats, we shall for *shore* substitute *flats*. The land described will then extend to the flats, and be bounded by the flats. On this substitution the construction is manifest. The land conveyed extends *to* the flats, but not *over* them; and the flats being a bound of the land conveyed, are not a part of it." The deed under consideration makes the shore of the lake a monument, and it should be treated as such. A grantor in a deed may make the shore of a lake or stream a monument of boundary, just as well as a road, wall or ditch, or other similar object. Bradford vs. Cressey, 45 Maine, 9; Trustees of East Hampton vs. Kirk, 68 N. Y. 459; City of Boston vs. Richardson, 13 Allen, 146, text 154, and authorities cited. There is a manifest difference between land bounded by the lake itself, and bounded by the shore of the lake. Bounded by the navigable water, the lake or the stream, the law extends the boundary to the edge of the channel. If bounded by the shore or bank, the land does not reach the water, but is limited to the upland. Clement vs. Burns, 43 N. H. 609, text 616; Nickerson vs. Crawford, 16 Maine, 245, and authorities cited on page 246; Chapman vs. Edmands,

3 Allen, 512, text 514; Niles vs. Patch, 13 Gray, 254. Where a boundary is limited "to the bank of a stream," it necessarily excludes the stream itself. Hatch vs. Dwight, 17 Mass. 288, text 298, 299, S. C. 9 Am. Dec. 145; Daniels vs. Cheshire R. R. Co., 20 N. H. 85. The description in the deed, by which the line extending to the shore is stated to extend "thence northwesterly with said shore of said lake to the north boundary line, etc., does not show an actual water boundary. A very similar case is Montgomery vs. Reed, 69 Maine, 510. We quote from the opinion of the court as follows: "The second call therein commences at a certain point south of the inlet and runs thence north * * to the shore of the Damariscotta river * *. The 'shore' is the ground between the ordinary high and low water-mark—the flats—and is a well-defined monument. 'To' is a word of exclusion when used in describing premises—'to' an object named excluding the terminus mentioned. Bradley vs. Rice, 13 Maine, 198 (S. C. 29 Am. Dec. 501); Bonney vs. Morrill, 52 Maine, 252, 256. 'To the shore,' then excludes no part of the 'flats.' The third call is 'thence northerly and westerly, as the shore lies, round a point of land and round the head of a cove, to the north-east corner * *. This obviously does not include any of the 'shore' or 'flats' in the cove, for the line called extends along the outside limits or margin of the shore, or of high water-mark. Thus a call 'to the margin of the cove, then westerly along the margin of the cove,' etc., was held to bound by a line without the edge of the water, and that the flats were not included." Nickerson vs. Crawford, 16 Maine, 245. See also Dunlap vs. Stetson, 4 Mason (C. C.), 349; Litchfield vs. Ferguson, 141 Mass. 97. In a note to Commonwealth vs. City of Roxbury, 9 Gray, 451 (524), is quite a collection of

cases upon this point, of which a few have been cited herein.

Our conclusion is, that conceding Orange Lake to be a navigable stream, Mrs. Axline is not a riparian proprietor. She does not own lands actually bounded by and extending to low water-mark.

While, what we have said disposes of the case, we think it useful to state in order to prevent future litigation between the same parties, that the court also reaches the conclusion from the record that the submerged lands of Orange Lake, involved in this controversy, were a part of the Arredondo Grant. This grant was made by the Spanish government to F. M. Arredondo and son before the cession of Florida to the United States. The lands in question were private property at the time of such cession, and at the time of the passage of the riparian act of 1856, and were not affected in any manner by the provisions of such act.

There is no error in the record, and the decree of the Circuit Court is affirmed.