PANAMA ICE & FISH COMPANY, *Appellant,* v. ATLANTA
& ST. ANDREWS BAY RAILWAY COMPANY, *Appellee.*

## Opinion filed April 5, 1916.

1. The statute, section 643 General Statutes of 1906, does not
vest in riparian owners an unqualified feé in the lands below
high water mark and out to the edge of the channel in
navigable streams, bays of the sea, or harbors, of this State.
So long as such submerged lands remain unimproved by
the construction of wharves, or unreclaimed by filling in
from the shore and converting the water into land, the ri-
parian owner, though the legal title is in him, has in so far
as the statute is concerned, no greater right to the bene-
ficial use of such submerged lands and the waters above them,
than any other citizen except for the purpose of protecting
from invasion the right to improve which the statute gives.

2. The State may fix the exterior lines of a navigable river if
the rights of the people to the use of the waters and the
shores of the river are not thereby substantially impaired;
and rights in the submerged lands not within the reasonably
fixed exterior lines of the river may be granted by legis-
lative authority if such grant does not impair the rights of
the whole people to the use of the waters for any purpose
expressed or implied by law.

3. The rights granted by the riparian statute of 1856 relate to
the space between the shore line and the edge of the chan-
nel of navigable streams, bays or harbors, and such rights
are not controlled by the direction of lines dividing the up-
lands.

4. As the rights granted by the riparian Act of 1856, Sections
643, 644, General Statutes of 1906, extend to "all lands cov-
ered by water lying in front of any tract of land lying upon
any navigable stream or bay of the sea or harbor, as far as
the edge of the channel," and the right of action given the
grantees to prevent encroachments extends to "all such sub-
merged lands in the direction of their lines continued to

the channel," the right of action extends to the space be-
tween lines drawn at right angles from the shore line "to
the edge of the channel," where the channel runs parallel
or practically so with the shore line.

5. Assuming that the riparian rights acquired under the quoted
statute by the owner of lands "lying upon" a navigable
stream, bay or harbor within the State, may be alienated
separate from the lands to which they attached under the
statute, such alienation can carry no greater right than the
original owner had by virtue of the conditions and limi-
tations contained in the statute making the qualified grant
to stated classes of riparian owners.

6. A conveyance of land to which riparian rights to submerged
lands are attached under the statute may carry the riparian
rights unless such rights are reserved or a contrary intent
appears from the conveyance.

7. A conveyance of uplands bordering on navigable water "with
riparian rights connected therewith," covers the space be-
tween lines drawn at right angles from the shore line "to
the edge of the channel" where the channel runs parallel or
practically so with the shore line, no contrary intent appear-
ing.

Appeal from Circuit Court, Bay County; D. J. Jones,
Judge.

Decree reversed.

*E. C. Maxwell* and *Sullivan & Sullivan,* for Appel-
lant;

*Will H. Price,* for Appellee.

WHITFIELD, J.—Appellant and appellee claim con-
flicting rights in the use of submerged land lying between
certain upland lots and a channel in St. Andrews Bay, a

navigable bay of the sea or Gulf of Mexico lying south and west of said lots in Bay County, Florida.

Upon the admission of Florida into the Union, the State by virtue of its sovereignty became the owner of all lands under navigable waters within the State, including the shores or space between ordinary high and low water marks, such State ownership being for the benefit of the people of the State to be used for purposes of navigation, commerce, fishing, etc., subject to such regulations as may be provided by law for the general welfare. The State may in the interest of the public welfare make limited dispositions of portions of the lands under navigable waters within its borders, or may permit the use thereof, when the rights of the whole people of the State as to navigation and other lawful uses of the waters are not materially impaired. State *ex rel.* Ellis v. Gerbing, 56 Fla. 603, 47 South. Rep. 353; Broward v. Mabry, 58 Fla. 398, 50 South. Rep. 826.

By Chapter 791, Acts of 1856, entitled "An Act to Benefit Commerce," the lawmaking power of the State recited that "it is for the benefit of commerce that wharves be built," etc., and enacted that the State be divested "of all right, title and interest to all lands covered by water, lying in front of any tract of land owned by a citizen of the United States, or by the United States for public purposes, lying upon any navigable stream or bay of the sea or harbor, as far as to the edge of the channel, and vested the full title to the same in and to the riparian proprietors, giving them the full right and privilege to build wharves into streams or waters of the bay or harbor as far as may be necessary to effect the purposes described, and to fill up from the shore, bank or beach as far as may be desired, not obstructing the channel, but leaving full space for the requirements of commerce,

and upon lands so filled in, to erect warehouses or other buildings, and also the right to prevent encroachments of any other person upon all such submerged lands in the direction of their lines continued to the channel." Sec. 643 Gen. Stats. of 1906; ditto Compiled Laws 1914, and notes.

This statute "does not vest in riparian owners an unqualified fee in the lands below high water mark and out to the edge of the channel·in navigable streams, bays of the sea, or harbors, of this State. So long as such submerged lands remain unimproved by the construction of wharves, or unreclaimed by filling in from the shore and converting the water into land, the riparian owner, though the legal title is in him, has in so far as the statute is concerned, no greater right to the beneficial use of such submerged lands and the waters above them, than any other citizen except for the purpose of protecting from invasion the right to improve which the statute gives. State v. Black River Phosphate Co., 32 Fla. 82, 13 South. Rep. 640.

The State may fix the exterior lines of a navigable river if the rights of the people to the use of the waters and the shores of the river are not thereby substantially impaired; and rights in the submerged lands not within the reasonably fixed exterior lines of the river may be granted by legislative authority if such grant does not impair the rights of the whole people to the use of the waters for any purpose expressed or implied by law.

The rights granted by the riparian statute of 1856 relate to the space between the shore line and the edge of the channel of navigable streams, bays or harbors, and such rights are not controlled by the direction of lines dividing the uplands.

As the rights granted by the riparian Act of 1856, Sections 643, 644, General Statutes of 1906, extend to

"all lands covered by water lying in front of any tract of land lying upon any navigable stream or bay of the sea or harbor, as far as the edge of the channel," and the right of action given the grantees to prevent encroachments extends to "all such submerged lands in the direction of their lines continued to the channel," this right of action extends to the space between lines drawn at right angles from the shore line "to the edge of the channel," where the channel runs parallel or practically so with the shore line.   Merrill-Stevens Co. v. Durkee, 62 Fla. 549, 57 South. Rep. 428; Sections 643, 644 Compiled Laws of 1914 and notes.

Assuming that the riparian rights acquired under the quoted statute by the owner of lands "lying upon" a navigable stream, bay or harbor within the State, may be alienated   separate from the lands to which   they attached under the statute, such alienation can carry no greater right than the original owner had by virtue of the conditions and limitations contained in the statute making the qualified grant to stated classes of riparian owners.   See Rivas v. Solary, 18 Fla. 122; Sullivan v. Moreno, 19 Fla. 200; State v. Black River Phosphate Co., 32 Fla. 82, 13 South. Rep. 640.

A conveyance of land to which riparian rights to submerged lands are attached under the statute may carry the riparian rights unless such rights are reserved or a contrary intent appears from the conveyance.   Axline v. Shaw, 35 Fla. 305, 17 South. Rep. 411.

The railroad company owns a portion at least of Block 27, and the Ice Company a portion of Block 31 of a plat made in 1888.   Both lots as claimed by the parties are opposite and extend to the waters of St. Andrews Bay.   Block 27 being northwest of Block 31, the water line running northwest and southeast past these and many other blocks.   See plats.

Apparently the channel in the bay runs somewhat parallel with the water line, *i. e.* northwest and southeast. The railroad company built a wharf from near the southeast corner of Block 27 in a southerly direction in the waters of the bay passing in front of Block 31 some distance from the shore line of Block 31. Subsequently the Ice Company built a wharf presumably at right angles from the shore to the channel of the bay, from the shore line opposite the portion of Block 31 owned by the Ice Company. This made the wharf of the Ice Company intersect the wharf of the railroad company in the waters of the bay between the shore opposite Block 31 and the channel of the bay opposite said Block 31. The railroad company obtained a temporary injunction restraining the Ice Company from building its dock across the dock of the railroad company. After filing an answer the defendant Ice Company filed a cross-bill praying for a decree that the space in the waters of the bay in front of the Ice Company's portion of Lot 31 "lying between parallel lines running at right angles to the shore from the points of the intersections of the boundaries of said property with the shore line thereof, to the channel of said St. Andrews Bay," belongs to the Ice Company, and that the railroad company be enjoined from using such space with its wharf. The injunction restraining the Ice Company was made perpetual, and the crossbill was dismissed. The Ice Company appealed. Each party asserts title and also an estoppel against the right claimed by the other.

The appellant, Panama Ice and Fish Company's claim of title is as follows:

G. B. Thompson, who in 1888 owned and made the record plat of the lands, in August, 1905, conveyed to G. M. West Block 31, as platted by G. B. Thompson and

filed for record in N ½ of Sec. 8, T. 4 S. R. 14 W. "with riparian rights in Bay as law directs." The plat shows an apparently open space between Block 31 and other Blocks to the southeast, and the waters of the Bay. This space is not marked as a street as other spaces in the plat not running along the water line are marked. Block 31 is on the plat subdivided into lots, each of which fronts on the apparently open narrow space between the line of the block as platted and the water line of the Bay. On October 31, 1905, G. M. West conveyed to the Gulf Coast Development Company Block 31, and other property, by the plat, "together with all riparian rights appertaining to the above property." On April 9, 1908, G. B. Thompson conveyed to the Gulf Coast Development Company "all that land situated and being on and in the southwest side of the street designated as Bay Street on the plat of said lands as made by G. B. Thompson in 1888 * * * in front of and opposite to Block 31 * * * extending from the center of said Bay Street out into the Bay of St. Andrews to the navigable channel as the law directs, with all riparian rights appertaining thereto." On May 1, 1908, the Gulf Coast Development Company conveyed to Oscar E. Williams and others, incorporators of the Panama Ice Company, a proposed corporation, a tract of land described as follows: "bounded by a line beginning at a point on the low water line of the shore of St. Andrews Bay, due south of the south east corner of Block 31, of G. B. Thompson's platting of U. S. Government Lot No. 2, Sec. 8, Tp. 4 South, Range 14 West, recorded at Vernon, Fla., Book 1, page 594, thence running due north to Gravier Street as shown on said plat, thence due west along Gravier Street one hundred and fifty feet; thence due south to the low water mark on St. Andrews Bay; thence in a southeasterly di-

rection along said low water mark to the point of beginning; also a tract of land lying under water of said bay bounded on the north by the above described land, on the south by the channel of said bay, on the east and west by a continuation of the east and west boundary lines of the above described tract of land, running due south to the channel of said bay; with all riparian rights; except an easement for a street sixty feet wide along the bay shore; and for a belt railway line on said street. And .the said parties of the first part hereby grant an easement through the lands lying between the above described tract and the A. & St. A. B. R. .R. for the purpose of building connecting side track for the use of the party of the second part reserving the privilege unto the party of the first part to connect with said side track, and to pass cars over the same; this conveyance is made upon the condition that the parties of the second part their heirs and assigns are not to use the land herein conveyed as the terminal of any railroad, but are not inhibited from making track connections with the A. & St. A. B. R. R."

On August 13, 1908, O. E. Williams and others conveyed to the Panama Ice Company a tract of land bounded by a line beginning at a point on the low water line of the shore of St. Andrews Bay due south of the southeast corner of Block thirty-one (31) of G. B. Thompson's platting of U. S. Government lot number two (2) of Section eight (8) Township four (4) south, range 14 west, as recorded in Book 1 at page 594 in 1888, of the records of Washington County, Florida, running thence due north through the said southeast corner of said block thirty-one (31) to Gravier Street; thence west along said Gravier Street a distance of one hundred and fifty (150) feet; thence due south to the low water line of said St. Andrews Bay; thence along the said low wa-

ter mark of said bay in a southeasterly direction to point of beginning.

On March 10, 1913, O. E. Williams and others executed to the Panama Ice Company a further conveyance so as to cover "all the interest which the parties (Williams and others) acquired under that certain deed from the Gulf Coast Development Company, dated the first day of May, 1908, which the parties (Williams and others) had not described in that certain deed executed by the parties (Williams and others) on the 13th day of August, 1908, to the" Panama Ice Company. On April 9, 1913, the Panama Ice Company conveyed the property to T. H. Moore and on August 8, 1913, T. H. Moore and wife conveyed the property to the Panama Ice & Fish Company. A certificate made by the Town Clerk stated that on May 3, 1909, the Town Council vacated the street along the beach in Panama City as shown by the minutes of the Town.

The claim of title of the Atlanta and St. Andrews Bay Railway Company, the appellee, is as follows:

On August 22, 1905, G. B. Thompson conveyed to G. M. West "Block 27 except one acre on north end of said Block, all the above being platted by G. B. Thompson and filed in Clerk's Office * * * situated in lot (2) U. S. or commonly described as N ½ of Sec. 8, T. 4 S. R. 14 W., with riparian rights in Bay as law directs." On October 31, 1905, G. M. West conveyed the same property to the Gulf Coast Development Company. On March 27, 1906, the Gulf Coast Development Company contracted to convey to the Atlanta and St. Andrews Bay Railway Company "one tract or parcel of land ten (10) feet in width along the water fronts of Block twenty-two (22), twenty-one (21), twenty-six (26), twenty-seven (27) and a lot lying on the water front south of block

twenty-seven (27) and West of a line running between said Block twenty-seven (27) and block twenty-eight (28) to the Bay; the south boundary of said ten (10) foot tract of land herein mentioned being high-water mark on said Bay; with all the rights of said Development Company in and to said tract or parcel of land lying south of same and extending as far out into the Bay as the rights and interest of said Development Company go with riparian rights connected therewith on said Bay."

On August 11, 1908, the conveyance was made to the railroad company. These statements as to claims of title show that both parties claim through the Gulf Coast Development Company, which latter company received on October 31, 1905, from G. M. West a conveyance of property in the plat including "block thirty-one (31) * * * and all of block twenty-seven (27), except one acre on the north end of said block * * * together with all riparian rights appertaining to the above property." The development company received also on April 9, 1908, a conveyance from G. B. Thompson, who platted the land and sold the blocks as above stated to West, covering "all that land situated and being on and in the southwest side of the street designated as Bay Street on the plat," having reference to the space between Block 31 and the Bay. The Gulf Coast Development then apparently owned the riparian rights that were incident to Block 31, which riparian rights were apparently south of the riparian rights to Block 27 also owned by the Development Company. The property conveyed by the Development Company was described as "a strip of land ten feet in width along the water front of Blocks * * * twenty-seven and a lot" so described as perhaps to touch the portion of Block 31 now owned by the appellant Ice Company, "with

all rights in and to said tract or parcel of land lying south of same, and extending as far out into the Bay as the rights of said Gulf Coast Development Company go with riparian rights connected therewith on the Bay." It is contended for the railroad company that this last conveyance of riparian rights "lying south of" the land conveyed gave the railroad company title to the riparian rights opposite Block 31. But the description used clearly indicates an intent to convey land together "with riparian rights connected therewith," which rights extend not south but southwest and have reference not to the lines dividing the uplands but to the channel of the Bay. If this were not the intention more definite and sufficient words of description would have been used to make the conveyance legally effective.

This simplifies the consideration of and disposes of the appellee railroad company's claim of title to the riparian rights lying between the Ice Company's land in Block 31 and the channel of the Bay.

The first part of the description in the conveyance from the G. C. D. Co. to Williams *et al.*, the predecessors in title to appellant is in effect as follows, to-wit: from the water line due south of the southeast corner of Block 31, thence due north to Gravier Street, thence due west along Gravier Street 150 feet, thence due south to the low water mark on St. Andrews Bay, thence in a southeasterly direction along said low water mark to the point of beginning.

This description carried the statutory riparian rights incident to the land, *viz*: the lands covered by water lying in front of the tract of land so described as far as to the edge of the channel, no contrary intent appearing by reservation or otherwise. The latter part of the description in the conveyance from the G. C. D. Co. to Williams

*et al.*, the predecessors in title to the appellant is as follows: "also a tract of land lying under water of said bay bounded on the north by the above described land, on the south by the channel of said Bay, on the east and west by a continuation of the east and west boundary lines of the above described tract of land running due south to the channel of said bay; with all riparian rights, except an easement for a street" etc.   This description evidently covers riparian rights south of those opposite and incident to Block 31, if effective for any purpose.

The evidence is sufficient to show that by silent acquiescence of its predecessors in title the Ice Company is estopped from complaining of the existence of the *present wharf structure* on its riparian rights between its land in Block 31 and the channel of the Bay.   This, however, does not take from the Ice Company its legal rights under the statute of 1856 conferring riparian  rights. The Ice Company may construct its wharf over or under or across the railroad company's wharf if no unnecessary injury is done to the latter wharf.   Such crossing does not present the question  determined  in Seaboard Air Line Ry. v. McRainey, 69 Fla. 462, 68 South. Rep: 763.

The decree is reversed with directions for further proceeding in accordance herewith.

TAYLOR, C. J., and SHACKLEFORD and ELLIS, JJ., concur.

COCKRELL, J., takes no part.