77 So.2d 834 (1955)
CITY OF MIAMI, a Municipal Corporation of Dade County, Florida, Appellant,
v.
Thelma R. HOLLIS and Milton Schrier, Appellees.
Supreme Court of Florida. En Banc.
February 1, 1955.
Rehearing Denied March 1, 1955.
*835 J.W. Watson, Jr., Olavi M. Hendrickson, Jack R. Kirchik, Miami, for appellant.
William W. Charles and Ward & Ward, Miami, for appellees.
MATHEWS, Chief Justice.
This is an appeal from a final decree enjoining the City of Miami from enforcing the provisions of a zoning law which re-zoned the property in question from B-3 to R-4. The B-3 classification was for certain types of business, including warehouses. The R-4 classification was a more highly restricted use which was for residential property, including hotels and apartments. The property in question is a strip of land bounded on one side by the Florida East Coast Railway main track and on the other side by a state road and one of the main thoroughfares entering Miami. The strip of land is about 1300 feet long and averages between 100 and 110 feet in depth.
In 1934 the City adopted a comprehensive zoning ordinance for the entire City of Miami and the property in question at that time was zoned B-3 for business uses and purposes. This zoning ordinance was adopted after extensive hearings were held as required by law.
About three years later the City reviewed the original ordinance and adopted another ordinance which contained certain adjustments with reference to restrictions and uses of other property, but re-adopted and re-affirmed the B-3 classification for the property in question.
It was alleged in the bill of complaint that the adoption of the original comprehensive plan and the re-adoption of the B-3 classification of this property three years later was by reason of its location adjoining the main railroad lines of the Florida East Coast Railway and because the long narrow strip of property was not suited for other than liberal business uses.
In 1941 the City adopted another ordinance changing the classification of the property in question from B-3 to R-4. It was alleged in the bill of complaint that at the time of this last change the property was vacant, uninhabited, unused and undeveloped and that the ordinance in question at the time of its adoption and at the time the suit was filed was and is invalid, confiscatory, arbitrary and void; that such reclassification did not promote the general welfare, health, morals or safety of the public and its effect was to confiscate the property for the reason that it had no reasonable *836 use value for hotel and apartment houses but did have a reasonable use for the purposes for which it was originally zoned and re-affirmed three years later. The bill alleged that plaintiffs had exhausted all reasonable remedies but the City, through its constituted officers, refused to grant any relief.
After the pleadings were settled the Court appointed a special master. Approximately 2,000 pages of testimony were taken and innumerable exhibits were filed in evidence. The master reviewed the history of the property and the history of the zoning regulations affecting this particular property and then found that the zoning regulation complained of restricting the use of the property for residential purposes was unreasonable, arbitrary and confiscatory. The character of the surrounding property was set forth in the report which was fully justified by the evidence. The master found from the testimony and the evidence that the land in question was wholly unsuitable and unsatisfactory for use as residence property and was suitable only for business property and business uses. An analysis of the testimony shows that approximately 426 passenger cars and 43 trucks pass the property every hour on the main highway and from 40 to 60 trains pass each day on the Florida East Coast Railway tracks. The master pointed out that the property was not desirable as residential property because of railroad equipment noises back of the property and the vehicular traffic in front of the property, all of which would create unnecessary hazards for children living on the property. With reference to hazards to school children, the master stated:
"14. * * * The property is far enough away from residential property not to disturb it. Adding this small amount of property to the already adjacent business property will be a proper civic improvement. The school children are largely taught to enter the school grounds from another direction than off of Northeast 4th Court, and besides this, the additional traffic on Northeast 4th Court will not necessarily endanger the safety of the school children any more than the traffic now endangers them, and their safety can be suitably guarded by appropriate traffic controls by the City of Miami, Dade County School Board, Police Department of Miami, and other authorities in control of vehicular traffic. * * *"
The master further found as follows:
"17. From all the evidence and testimony submitted to me, which I am filing in the office of the Clerk, I find the plaintiffs have proven the allegations of their bill of complaint by an overwhelming preponderance of the evidence, and that the necessity to change the uses to be made of their property from R-4 to B-3 is beyond debate or any reasonable difference of opinion."
Exceptions were filed to the master's report, which were overruled, and the special master's report was "accepted, ratified and approved".
We are not unmindful of the rule adopted in this jurisdiction that the Court ordinarily will not substitute its judgment for that of an administrative board in a zoning matter where the question presented is fairly debatable. The master found that the question presented was beyond debate or any reasonable difference of opinion, or in other words, that the allegations of the bill of complaint had been established beyond question. The Chancellor affirmed this report in full. The evidence was sufficient to justify the report of the master and the final decree of the Chancellor.
The burden was upon the appellant to show a reversible error. The decree of the Chancellor comes before this Court clothed with the presumption of correctness. No reversible error has been made to appear, except the allowance to the master of $3,500 for his fee which is excessive and should be reduced to $1,500.
*837 We note that the master was paid the sum of $2,500 by the plaintiff without any stipulation between the parties and without the order of the Chancellor. Such practice is not approved. Except as to such sums as may be necessary to pay the Court Reporter from time to time, there should be no advances on account of masters' fees without a stipulation of the parties or without the order of the Chancellor.
The decree be and the same is hereby affirmed, with the exception that the master's fee be and the same is hereby reduced to $1,500.
TERRELL, THOMAS, SEBRING, HOBSON and ROBERTS, JJ., concur.
DREW, J., dissents except as to judgment on masters' fees to which he agrees.