146 So.2d 361 (1962)
Howard GIES and Kenyon M. Heenan, and Wife, Lucille E. Heenan, Appellants,
v.
Charles R. FISCHER, R. Hosey Wick, Edward H. LaVoie, Harry R. Chadwick, Jr., and A.L. Anderson, As and Constituting the Board of County Commissioners of Pinellas County, Florida; and, As Such, Composing and Constituting the Governing Authority of the Pinellas County Water and Navigation Control Authority, Appellees.
No. 31604.
Supreme Court of Florida.
June 27, 1962.
Rehearing Denied October 11, 1962.
Adrian S. Bacon of Bacon & Hanley, St. Petersburg, for appellants.
Richard W. Ervin, Atty. Gen., and Robert C. Parker, Asst. Atty. Gen., for appellees.
DREW, Justice.
The appellants challenge a decree of the Circuit Court for Pinellas County as a decision directly passing upon and sustaining the validity of Chapter 57-362, Laws of Florida, 1957, Section 253.122, Florida Statutes, F.S.A., against attack on constitutional grounds. Appellants in the court below and here assert the unconstitutionality of the action taken pursuant to that law in that it deprives them of their property without due process of law, is a taking of private property without just compensation, is a denial of the equal protection of the law, impairs the obligation of a contract, and is an unlawful and unconstitutional delegation of the legislative authority.[1]
*362 The statute in question[2] authorizes, in brief, local governing bodies to fix a bulkhead line offshore from lands or islands "bordering on or being in the navigable waters of the county, as defined in § 253.12," beyond which line any filling "shall be deemed an interference with the servitude in favor of commerce and navigation with which the navigable waters of this state are inalienably impressed." From a decision of the governing authorities in Pinellas County, setting a bulkhead line over and precluding filling upon a portion of submerged lands owned by appellants in Boca Ciega Bay, an appeal was taken, resulting in a decree reversing the action of county authorities because "to hold that a bulkhead line may be established at a location as was done in this case would require a holding that the act is unconstitutional, and this the Court will not do when it can be construed in such a fashion as to render it constitutional." F.S. Sec. 253.122, F.S.A., was construed to authorize the establishment of a bulkhead line only at a point where, in fact, "a further extension of land or islands outward would be an interference with the servitude in favor of commerce and navigation." The cause was remanded, permitting the establishment of a line across the appellants' property provided there be strict adherence to the standards set by the law regarding necessity in the prevention of interference with the public rights.
From a consideration of all related provisions of the act, we conclude that the court properly construed the statutory language, ruled upon its validity as so construed, and disposed of the cause before it in accordance with those views.
Appellants' preliminary contention is that Section 253.122, authorizing bulkhead lines "offshore from any existing lands or islands bordering on or being in the navigable waters of the county, as defined in § 253.12," (e.s.) incorporates the exclusion in the latter section[3] of all "submerged lands heretofore conveyed" from lands vested by that section in the trustees of the *363 internal improvement fund. The more reasonable assumption, in our opinion, is that the definition incorporated by reference is simply the definition of navigable waters in Sec. 253.12 as "all coastal and intracoastal waters." Fortifying this construction, i.e. that the intention of the act was to authorize establishment of bulkhead lines on lands privately as well as publicly owned at any point where further extension of fill would impair the inalienable public rights specified, is the ancillary provision of Section 253.123[4] of the act to the effect that the only purchasers of lands from the trustees who need not comply with Sec. 253.122 are those holding fill permits approved previous to the enactment.
The objections to the decree upon constitutional grounds are necessarily premised upon a contention that the statute could not lawfully authorize the establishment of a bulkhead line, for any reason, upon submerged lands to which appellants hold title by deraignment from a duly confirmed conveyance from the trustees of the internal improvement fund to their predecessors.
We think, however, that the limitations of the act as construed place it squarely in line with the decisions defining the nature of the state's title in sovereignty lands in general, and the restrictions inherent in its powers of alienation.[5] A conveyance of such lands will, of course, to the full extent of the grantor's power, vest in the purchaser the rights of use and control normally accompanying title, and the doctrine of estoppel, applied heretofore[6] against the trustees in this field, may further bolster title to areas where fill operations have been accomplished. Even if, however, that doctrine should operate in the latter situation to cut off all residual public rights, or create a conclusive presumption that the public servitudes were not at the time impaired so as to require that any subsequent impairment be corrected only by exercise of the power of eminent domain, we find that in the circumstances of this case the doctrine cannot prevent enforcement of the controverted statute.
Under the rule of the cited cases there can be no doubt that in the absence of some overriding necessity a conveyance of public lands or rights in lands which actually results in the impairment of the public servitudes, referred to in the statute here involved, must fail. Tested by that principle, no rights lawfully vesting under previous conveyances will be infringed by a proper application of this legislation, and whether it is sustained as police regulation or an exercise of retained power under the trust doctrine governing sovereign lands, the decree appealed in this case should be affirmed.
It is so ordered.
ROBERTS, C.J., and TERRELL and HOBSON, JJ., concur.
THOMAS, J., dissents.
*364 THOMAS, Justice (dissenting).
It is my view that the court should not assume jurisdiction of this cause. The order of the circuit judge to whom the landowners appealed from a decision of the Pinellas County Water and Navigation Control Authority was not final. It is true that the circuit judge held Chapter 57-362, Laws of Florida, Acts of 1957, constitutional but he remanded the cause to the Board for the establishment of a bulkhead line in accordance with his view that the line had to be fixed at a place beyond which filling of the land would interfere with commerce and navigation.
Therefore, when the cause gets back to the Authority for aught we know that body will fix the line at a location that will be acceptable to the parties who are now complaining.
Furthermore, there is no indication in the record that the bulkhead line as established by the Authority has ever been approved or disapproved by the Trustees of the Internal Improvement Fund. Under Sec. 253.122 it is evidently necessary that such approval or disapproval be expressed by the Trustees as a basis for appeal and that the time for appeal is computed from the date of approval or disapproval. This is the tenor of an opinion of the Attorney General, who appears as counsel in this case, addressed to the Director of the Trustees of the Internal Improvement Fund, dated 10 March 1958 and numbered 058-82. It was written there that the bulkhead line as set by the local authority "is not a final decision from which an appeal will lie until the trustees have approved or disapproved."
It is my conclusion that the appearance here is premature.
In the light of the circuit judge's ruling, it would appear that any discussion of the constitutionality of the relevant act would amount only to an academic adventure.
I am constrained to dissent.
NOTES
[1] Citing Section 12, Declaration of Rights, and Section 1, Article III, Constitution of the State of Florida, and Article I, Section 10, Amendment XIV, Constitution of the United States, F.S. Vol. 3, F.S.A.
[2] "253.122 Power to fix bulkheads

"(1) Subject to the formal approval of the trustees of the internal improvement trust fund, the board of county commissioners of each county or governing body of any municipality, after public hearing of which at least thirty days prior notice has been given by publication of such hearing for three consecutive weeks in a newspaper having general circulation in the county, are hereby authorized on their own initiative to locate and fix a bulkhead line or lines offshore from any existing lands or islands bordering on or being in the navigable waters of the county, as defined in § 253.12, within all or part of the territorial area of the county as the board of county commissioners in its discretion may determine, provided however that where any bulkhead line has been located and fixed by any municipality pursuant to statutory authority, such bulkhead line shall be accepted and adopted by the county commissioners of the county wherein such municipality is located as its bulkhead line within the territorial area of such municipality subject to the provisions of this chapter. Any bulkhead line when so fixed or ascertained and established shall represent the line beyond which a further extension creating or filling of land or islands outward into the waters of the county shall be deemed an interference with the servitude in favor of commerce and navigation with which the navigable waters of this state are inalienably impressed."
[3] "253.12 Title to tidal lands vested in state

"(1) Except submerged lands heretofore conveyed by deed or statute, and submerged lands in navigable fresh water lakes, rivers and streams, the title to all sovereignty tidal and submerged bottom lands, including all islands, sandbars, shallow banks and small islands made by the process of dredging of any channel by the United States government and similar or other islands, sandbars and shallow banks located in the navigable waters, which shall include all coastal and intracoastal waters, of the state, is vested in the trustees of the internal improvement trust fund. The trustees of the internal improvement trust fund may sell and convey such islands and submerged lands if not determined by the trustees to be contrary to the public interest upon such prices, terms and conditions as they see fit. * * *"
[4] "253.123 Restriction of filling land.  No private person, firm or corporation shall construct islands or add to or extend existing lands or islands bordering on or being in the navigable water of the state as defined in § 253.12(1) by pumping sand, rock or earth from such waters or by any other means without first complying with § 253.122 provided nothing herein contained shall relate to artifically created navigable waters. This section shall not apply to lands the owners of which have heretofore purchased or are purchasing under contract from the trustees of internal improvement trust fund and who, on June 11, 1957, have permits issued by the United States Corps of Engineers, and approved by the trustees of internal improvement trust fund to fill said lands."
[5] Deering v. Martin, 95 Fla. 224, 116 So. 54; Brickell v. Trammell, 77 Fla. 544, 82 So. 221; Panama Ice & Fish Co. v. Atlanta & St. A.B.R. Co., 71 Fla. 419, 71 So. 608.
[6] Trustees of Internal Imp. Fund v. Claughton, Fla. 1956, 86 So.2d 775. Cf. Duval Engineering & Contracting Co. v. Sales, Fla. 1955, 77 So.2d 431.