171 So.2d 376 (1965)
Alfred G. ZABEL and David H. Russell, Appellants,
v.
PINELLAS COUNTY WATER AND NAVIGATION CONTROL AUTHORITY, Appellee.
No. 32831.
Supreme Court of Florida.
January 20, 1965.
Rehearing Denied February 26, 1965.
*377 Harris & Harris, St. Petersburg, for appellants.
Page S. Jackson and Julian R. Howay, St. Petersburg, for Pinellas County Water and Navigation Control Authority, appellee.
Byron T. Sauls, St. Petersburg, as amicus curiae.
CALDWELL, Justice.
Appellants Zabel and Russell petitioned the Pinellas County Water and Navigation Control Authority, appellee, requesting that it fix a bulkhead line and grant them a dredge and fill permit for approximately 11.5 acres of submerged land in Boca Ciega Bay under the authority of F.S. §§ 253.122, 253.124, F.S.A. and Chapter 31182, Special Acts 1955. An examiner appointed by the Authority recommended denial of appellants' application. The Authority affirmed the examiner. The Circuit Court of Pinellas County held the Authority correct in its confirmance and found additionally that appellants had elected their remedy and estopped themselves from urging unconstitutionality *378 of the acts under which they were at the same time seeking relief.
The District Court of Appeal, Second District,[1] affirmed the Circuit Court on the merits of the cause but held the lower court erred in holding appellants were barred under doctrine of election of remedies and estopped from raising the constitutional issue. The District Court then proceeded to "deal initially with the matter of constitutionality" and held the acts in question valid "even though title to the submerged lands had been acquired prior to the passage of the acts protested * * *."[2]
Appellants assert they were erroneously required by the Authority and the trial court to carry the burden of proof in showing no adverse effect upon the public interest.[3] The question was raised before the Authority, the trial court and the District Court of Appeal and is presented here. Appellee, although assuming that appellants have the burden of proof, has ignored this issue and argues only there is evidence in the record to sustain the findings of the examiner.
The examiner, the Authority and the trial court apparently held the statute required appellants to prove the proposed fill would not materially affect adversely any of the eight specified public interests. It is not clear the statutes do in fact place the burden of proof upon the property owner but, if they do, such requirement would render the statute unconstitutional as to the facts of this case.
The District Court appears to have agreed with appellants' contention that Chapter 31182 provides for refusal of a permit only where it is shown the proposed fill will have material adverse effect. The court held, under the statute, the Authority was free to make its own determination independent of presumption as to the examiner's findings and reasoned "* * * it is obvious that the determination made [by the Authority] was that the proposed plan would produce materially adverse effects."[4] We agree the Authority could have made an independent determination but, in doing so, it was required to comply with Chapter 31182 Special Acts of 1955(8) (e)[5] by reducing its determination to writing *379 and filing it with the clerk for the inspection of the public. Our examination of the Minutes of the meeting at which the Authority voted to deny the permit persuades us the Authority did not make an independent determination which was reduced to writing and filed as required but merely accepted the findings and determination of the examiner, which were based upon an erroneous application of the rule relating to the burden of proof.
The examiner found the appellants had failed to prove there would be no adverse effect but he did not find that the appellee had proven material adverse effect would result from the proposed fill. He reached these conclusions:
"Based upon the testimony taken before me, and my personal inspections of the proposed dredge and fill site, it is the finding of the Examiner that Applicants have failed to establish that the proposed plan of development will have no adverse effect on the use of the waters of Pinellas County for transportation, recreational or other public purposes, flow of water or tidal currents and erosion and shoaling of channels in the area necessarily affected by the proposed development; further Applicants have failed to establish that the proposed plan of development will have no adverse monetary or other effect upon the uplands surrounding or necessarily affected by said plan of development." (Emphasis supplied)
The examiner did not find, nor could he have on the record, that any material adverse effect on the public interest had been demonstrated. The evidence in the record and as summarized by the District Court in its opinion[6] failed to meet the standard of proof contemplated by the statute.
The burden and the degree of proof required in proceedings such as those involved here are of fundamental importance in view of the property rights involved. The sale of the land by the state to appellants' predecessors in title expressly carried with it by statute the right to bulkhead and fill. This right, a form of property,[7] was at all times a legitimate public concern and as such is subject to reasonable regulation under the police power.[8]
Conceding, for the purpose of this cause that, under certain conditions, a police power regulation could, by prohibiting filling or dredging, deprive the owner of any valuable use of his property, it is clear that such regulation can be valid only if a material adverse effect specified by the Legislature is proven.[9] Such regulation, absent *380 proof of an overriding public necessity, constitutes the taking of private property without just compensation.[10]
As previously stated the conveyance from the Trustees of the Internal Improvement Fund carried with it the right to bulkhead and fill.[11] That conveyance is presumptively valid and based upon a determination by the Trustees that the public interest would not be impaired. In Hayes v. Bowman, 91 So.2d 795, 802 (Fla. 1957) this court stated:
"[T]he Trustees of the Internal Improvement Fund are five constitutional officers of the executive branch of the government. If we are ever to apply the rule that public officials will be presumed to do their duty, it would appear to us to be most appropriate in this instance. Certainly we are not to assume that in the supervision and disposition of submerged lands the Trustees will knowingly ignore the rights of upland owners. It is to be assumed that they will exercise their judgment in a fashion that will give due regard to private rights as well as public rights. This Board would appear to be the most appropriate repository of the responsibility to be exercised in these matters in the first instance. The exercise of their judgment should not be subjected to adverse judicial scrutiny absent a clear showing of abuse of discretion or a violation of law."[12]
In 1951 the conveyances by the trustees of the lands in question were "ratified, confirmed, and validated in all respects."[13] If, because of the passage of time and changed conditions, the public interest will be impaired by the proposed use of the land the burden is on the objectors to demonstrate that fact.
In Gies v. Fischer,[14] this court affirmed the District Court's construction of F.S. § 253.122, F.S.A. as authorizing the establishment of a bulkhead line only at a point where in fact "a further extension of land or islands outward would be an interference with the servitude in favor of commerce and navigation." and held:
"Under the rule of the cited cases there can be no doubt that in the absence of some overriding necessity a conveyance of public lands or rights in lands which actually results in the impairment of the public servitudes, referred to in the *381 statute here involved, must fail." (Emphasis supplied)
The District Court of Appeal correctly held the statute involved to be constitutional but was in error in failing to find that a denial of the permit in this case can be sustained as a valid police regulation only if material adverse effect on the specified public interest is proven. The statutory rights of the appellants to dredge, fill and bulkhead the land, subject to reasonable limitations, are appellants' only present rights attributable to ownership of the submerged land itself.[15] Those rights may not be arbitrarily denied and the owners deprived of the only beneficial use of their property without compensation.
In Kass v. Lewin[16] this court held:
"The word `property' in the Fourteenth Amendment to the U.S. Constitution includes the right to acquire, use and dispose of it for lawful purposes, and the constitution protects each of these essentials."
In Ocean Villa Apartments, Inc. v. City of Fort Lauderdale,[17] this court sustained an attack on a zoning ordinance as applied to petitioners' property because the ordinance, in reducing the building area on the property to seventeen feet in depth, deprived the owner of its beneficial use. This court held:
"This court is committed to the doctrine that when the application of a zoning ordinance has the effect of completely depriving the owner of the beneficial use of his property by precluding the only use to which it is reasonably adapted, an attack on the validity of the ordinance as applied to the particular property involved will be sustained. State ex rel. Taylor v. City of Jacksonville, 101 Fla. 1241, 133 So. 114; State ex rel. Helseth v. Du Bose, 99 Fla. 812, 128 So. 4; Forde v. City of Miami Beach, 146 Fla. 676, 1 So.2d 642."
In Beck v. Littlefield[18] this court stated that an ordinance which purported to prohibit the erection of any building on the property in question would clearly "run afoul of the guaranty of due process."
It is our view that a denial of permission to fill in this case amounts to a taking of property without just compensation because it was not established that the granting of the permit would materially and adversely affect the public interest. In view of the foregoing, the decision appealed from is quashed and the cause remanded for disposition consistent herewith.
It is so ordered.
DREW, C.J., ROBERTS and O'CONNELL, JJ., concur.
ERVIN, J., dissents with opinion.
THOMAS and THORNAL, JJ., dissent and concur with ERVIN, J.
ERVIN, Justice (dissenting).
Appellants applied to the Pinellas County Water and Navigation Control Authority to fix a bulkhead line and grant them a dredge and fill permit for approximately 11.5 acres of submerged land in Boca Ciega Bay to be used for a trailer park. The Authority is composed of the Board of County Commissioners of Pinellas County. The application was filed pursuant to F.S. §§ 253.122 and 253.124, F.S.A., which were derived from Chapter 57-362 as amended by Chapters 61-119 and 63-512 of the Laws of Florida, the same being the State Bulkhead Law, and Chapter 31182, Special Acts of Florida, 1955, a special act regulating the *382 dredging and filling of submerged lands in Pinellas County.
Inasmuch as the District Court of Appeal passed upon and upheld the constitutionality of said statutes which were applied by the Authority (Appellee) in denying Appellants' application, our appeal jurisdiction is invoked.
Appellants contend that the action of the Authority in denying their request for a bulkhead line and dredge and fill permit is erroneous, (1) because they own the 11.5 acres of bottom land by title derived from an original grant of the Trustees of the Internal Improvement Trust Fund through predecessors in title and the Bulkhead Law and Chapter 31182, enacted after the grant, could not be constitutionally applied to deny their application since this would deprive Appellants of the use of their property, including the right to fill it; (2) because neither the Authority nor its examiner made specific record findings in writing subsequent to the hearing upon their application, which included the taking of testimony from witnesses for Appellants and objectors, setting forth the reasons assigned by the examiner or the Authority for the denial in keeping with the standards and requirements prescribed by Chapter 31182; and (3) because the Authority's examiner improperly found the Appellants had, but did not carry the burden of proof in showing no adverse effect upon the public would result if their application was granted.
Chapter 31182 has been superseded in important respects by the State Bulkhead Law, which later statute provides in F.S. § 253.128, F.S.A., as follows:
"Enforcement; board or agency under special law.  In any county where the legislature by special law or general law with local application has heretofore or hereafter transferred or delegated to any county board or agency other than the board of county commissioners or the governing body of any municipality powers and duties over the establishment of bulkhead line or lines, dredging permits, fill permits, sea wall construction or any other powers of a like nature such agency shall have jurisdiction under this law in lieu of the board of county commissioners or the governing body of any municipality as the case may be."
This section authorizes the Appellee to act in lieu of the Board of County Commissioners of Pinellas County in locally administering the Bulkhead Law in the unincorporated coastal areas of Pinellas County. Chapter 31182 makes no provision for the fixing of bulkhead lines. This is authorized only by F.S. § 253.122, F.S.A.
A cursory inspection will disclose that the provisions of F.S. § 253.124, F.S.A., have superseded the provisions of Chapter 31182 in processing applications for dredge and fill permits. Nevertheless, the objectives and the administrative procedures affording due process in Chapter 31182 and the Bulkhead Law are substantially the same. The proceedings resorted to under Chapter 31182 in processing and reviewing the Appellants' application for the dredge and fill permit were sufficient to comply with Section 253.124.
The use of an examiner in the hearing process, while not prescribed in F.S. § 253.124, F.S.A., is nevertheless permissible under the law generally in the administrative process. See 42 Am.Jur., Pub.Adm. Law, 141, p. 494. See also Chapter 120, the State's Administrative Procedure Act.
The Controlling provisions relating to applications for bulkhead lines and dredge and fill permits in the Bulkhead Law are as follows:
F.S. Section 253.12, F.S.A. (title to tidal lands vested in state), while relating primarily to the title and sale of submerged lands, nevertheless prescribes criteria for consideration in fixing a bulkhead line prior to sale:
"* * * If objections are filed, the trustees shall hear and consider the *383 same, and if it appears that the sale of such islands and submerged lands and their ownership by private persons would interfere with the lawful rights granted riparian owners, the conservation of natural resources, or would be a serious impediment to navigation, or for other reasons would be contrary to the public interest, the trustees shall withdraw the said lands from sale; provided, however, anything in this section to the contrary notwithstanding, lands defined herein lying between the ordinary high water line and any bulkhead line, established hereunder shall be sold only to the upland riparian owner and to no other person, firm or corporation; and such sale to said upland riparian owner shall be made pursuant to the provisions herein." (Emphasis supplied)
F.S. Section 253.122, F.S.A. (power to fix bulkheads), provides in part as follows:
"(1) Subject to the formal approval of the trustees of the internal improvement trust fund, the board of county commissioners of each county or governing body of any municipality, after public hearing * * * are hereby authorized on their own initiative to locate and fix a bulkhead line or lines offshore from any existing lands or islands bordering on or being in the navigable waters of the county, as defined in § 253.12, within all or part of the territorial area of the county as the board of county commissioners in its discretion may determine, * * *. Any bulkhead line when so fixed or accertained and established shall represent the line beyond which a further extension creating or filling of land or islands outward into the waters of the county shall be deemed an interference with the servitude in favor of commerce and navigation with which the navigable waters of this state are inalienably impressed.
"(2) Upon the written application of any riparian owner addressed either to the board of county commissioners or the governing body of any municipality wherein the land lies, the board or governing body is directed to locate and fix a bulkhead line or lines within the area and vicinity of the land owned by such applicant * * *.
* * * * * *
"(5) Any person, natural or artificial (including riparian owners), aggrieved by any decision of the board of county commissioners or governing body of any municipality or trustees of internal improvement trust fund establishing a bulkhead line may, within the time provided by the Florida appellate rules, have the decision reviewed by the appropriate circuit court by filing therewith a petition for issuance of a writ of certiorari and it shall be the duty of such board or the trustees, as the case may be, to cause to be prepared and certified, at the cost of appellant, a transcript of all proceedings including the evidence introduced at such hearing, and the court shall hear and determine the cause on the record without indulging any presumption in favor of the decision of such board or the trustees. * * *"
F.S. Section 253.124, F.S.A. (application for filling land), provides in part:
"Any private person, firm or corporation desiring to construct islands or add to or extend existing lands or islands located in the unincorporated area of any county bordering on or in the navigable waters of the state as defined in § 253.12, by pumping sand, rock or earth from such waters or by any other means, shall make application in writing to the board of county commissioners of the county wherein such construction is designed, for a permit authorizing such person, firm or corporation to engage in such construction, * * *. In the event such application be found by the *384 board of county commissioners or other authorized body not to be violative of any statute, zoning law, ordinance, or other restriction which may be applicable thereto, or that no harmful obstruction to or alteration of the natural flow of the navigable water as defined in § 253.12, within such area will arise from the proposed construction, or that no harmful or increased erosion, shoaling of channels or stagnant areas of water will be created thereby, or that no material injury or monetary damage to adjoining land will accrue therefrom, the same shall be granted to the applicant, * * *. In the event a permit is refused the applicant therefor may have the order refusing the permit reviewed upon filing a petition for the issuance of a writ of certiorari with the appropriate circuit court in the manner and within the time prescribed by the Florida appellate rules."
Consideration of the foregoing provisions and the evidence pro and con the application for the bulkhead line and the dredge and fill permit as outlined in the District Court of Appeal opinion under review, leads to the conclusion there was no fundamental or procedural error arising solely out of the Examiner's report, either as to his findings or in respect to who had the burden of proof. This is so when it is recalled first that the Authority in its meeting of November 12, 1959, as reflected in its minutes, denied Appellants' application on the merits in the following language:
"Following further argument by Mr. Sauls and Mr. Bacon, Commissioner LaVoie moved, seconded by Commissioner Fischer and carried unanimously, that the Authority, having considered the exceptions to the Examiner's Report and the record of testimony taken before the Examiner and having heard the argument of counsel for the applicants and for the objectors, the Examiner's Report be hereby confirmed and the application denied."
Later, on January 28, 1960, it denied Appellants' petition for rehearing. Thus the Examiner's findings and report were not decisive inasmuch as the Authority itself made its determination on the merits after considering the record.
Second, this is so because the whole matter was reviewed by the Circuit Court, which considered "a transcript of all proceedings, including the evidence introduced at said hearing, * * *" and the Circuit Court did, as prescribed by the statutes, "* * * hear and determine the cause on the record without indulging any presumption in favor of the decision of such board [Appellee] * * *"
The Circuit Court decided the matter completely independent of the determination of the Authority since it was not required to indulge in any presumption favorable to said decision. Therefore, the Circuit Court's determination was not infected by procedural error since there was no duty under F.S. §§ 253.122 and 253.124, F.S.A., for the Circuit Court or the Authority to set out in writing any findings. The thrust of the controlling statutes was whether from all of the evidence the bulkhead line and the dredge and fill permit should have been granted or refused under the standards prescribed in the State Bulkhead Law quoted hereinbefore. In this connection, it is recalled that the state and the public generally have an important interest in the outcome of local action upon any application and the same is made subject to approval by the Trustees of the Internal Improvement Trust Fund. See relevant provisions of F.S. §§ 253.122 and 253.124, F.S.A., to this effect.
The final opinion and decree of the Circuit Court recites that the court, accompanied by counsel, "* * * made an inspection of the site of the proposed fill. This Court has read the complete record in this appeal and upon consideration of the same this Court was of the opinion that the decision of the Pinellas County Water and Navigation Control Authority upon the *385 merits of the case was correct and that it should be sustained." (Emphasis supplied.)
As outlined in the opinion of the District Court of Appeal, some fifteen witnesses for objectors to the application testified that granting the permit would "* * * complete the existing damage which had already been done to fishing, bathing, beach, and scenic qualities of the subject area of Boca Ciega Bay as these affect the livability, enjoyment, and freedom from various asserted adverse effects. The general tenor of their statements was that these once beautiful and pleasant surroundings for living and recreational pursuits had steadily deteriorated as various portions along the bay front had been filled and dredged, with attendant disappearance of marine life, fouling of the beaches, water, and air, restriction of navigation, obstruction of the passage of free water, slowing of the tidal flow, and depreciation in value of residential properties." The opinion also indicates that expert witnesses for Appellants made the following admissions: "There were admissions that a more abundant amount of water ebbing and flowing over the bottom is healthful for fish, that diminution of it might have helped reduce vegetation, that more filling could result in more damage to marine life, that previous fills had reduced the tidal prism, which could also be reduced further by the proposed plan, with a consequent lessening of the amount of water ebbing and flowing, and that navigation would be detoured about 2,300 feet by the purported changes. Additionally, there was the acknowledgment by one of the engineering experts that, since the extensive filling has eventuated in the area, the shoaling in Blind Pass has been more pronounced and that the water from the fill area proposed would go out Blind Pass."
While respecting the need to afford a landowner the fullest possible enjoyment of his property, nevertheless, there is no unconstitutional deprivation of their property rights in this case. Nor can I agree with Appellants' contention that the evidence fails to support the administrative refusal of their application. To do so would in effect by precedent emasculate and render sterile the Bulkhead Law and our previous decision upholding it. I can conceive of no stronger evidence or greater degree of evidence supporting a refusal of a bulkhead line and fill permit than appears in this case. To hold it insufficient would place the Bulkhead Law beyond successful execution. Analogously, no similar objections as are urged by Appellants have been sustained in zoning regulation cases. See 35 Fla.Jur., pp. 725 to 729, incl., and Miami v. Hollis, 77 So.2d 834 (Fla. 1955); State ex rel. Helseth v. DuBose, 99 Fla. 812, 128 So. 4 (1930); Alianell v. Fossey, 114 So.2d 372 (Fla.App. 1959); Boucher v. Novotny, 102 So.2d 132 (Fla. 1958).
I think the evidence demonstrated with great strength the 11.5 acre fill would produce material adverse effect upon the public within the contemplation of the governing statutes. Moreover, I do not believe we are warranted at the appellate level in disturbing the conclusion to this effect reached below.
"When approved by the trial court, the findings of fact of a referee, master, auditor, commissioner, or register, will not as a general rule be disturbed by the reviewing court. As stated in a great number of decisions such findings by a person to whom a case has been referred will be upheld by the reviewing court when supported by the evidence, or by any or sufficient or substantial evidence, * * * or when it is conflicting, and should not be set aside unless there is manifest error therein, unless manifestly against the weight of the evidence or manifestly not warranted by the evidence, unless there is no evidence to sustain the findings * * * or unless fraud or abuse of discretion is shown." 5A C.J.S. Appeal and Error § 1669, pp. 635-641, incl.
See London Operating Co. v. Continental Const. Co., 118 Fla. 15, 159 So. 33; Holding v. Holding, Fla., 46 So.2d 893; State ex rel. *386 Williams v. Whitman, 116 Fla. 196, 150 So. 136, 156 So. 705, 95 A.L.R. 1416; Blanchard v. McCord, Fla., 40 So.2d 457; Carolina Lumber Co. v. Daniel, 97 So.2d 156 (Fla. App.).
In Cohen v. Fincke (Fla.), 39 So.2d 65, it was held that a master's report, though possibly susceptible to the charge of being capricious and whimsical, did not constitute error, since the chancellor in ultimately deciding the case could take his choice of conflicting reports and was bound to adopt neither.
It is true it was assumed below that Chapter 31182, the Special Act, still controlled for all purposes. The District Court of Appeal said that Section 9 of Chapter 31182 "* * * authorizes, where the board [Authority] deems necessary, appointment of an examiner to conduct such hearings as are provided for in the chapter. Subsection (f) states that the Authority shall consider any duly filed exceptions to the examiner's report, the record of testimony taken before the examiner, without presumptions as to the examiner's findings of fact, the engineering and other data. The Authority then shall either confirm the report or enter such other determination as is proper. * * * The Authority ruled under the latter alternative and so denied appellants' application. Appellants were the proponents; the objectors resisted. Each submitted evidence relating to the eight statutory prerequisites; it is obvious that the determination made was that the proposed plan would produce materially adverse effects. We conclude that the circuit court's final decree upon the merits of the cause must be affirmed."
In passing, it is noted that Section 9 of Chapter 31182 does not require the Authority to do more than the District Court of Appeal said the Authority was required to do when it employs the services of an examiner. The Authority is not required by Section 9 to file its findings in writing in disposing of an application, but may "confirm the report (the examiner's) or enter such other determination as is proper." The District Court of Appeal then states that in these proceedings the Authority ruled under the latter alternative and so denied Appellants' application. This appears to be all that is legally required, even assuming Chapter 31182 still controls. F.S. Section 253.124, F.S.A., merely provides: "In the event a permit is refused the applicant therefor may have the order refusing the permit reviewed upon filing a petition for the issuance of a writ of certiorari with the appropriate circuit court in the manner and within the time prescribed by the Florida appellate rules."
The controlling statutes do not require the Authority to reduce its findings to writing so they may be measured by the statutory standards. What is decisive is whether the record of the hearing and the testimony supports the decision of the Authority within statutory standards.
There was no fatal procedural defect even if Chapter 31182 still controlled. The merits were duly considered by the Authority, the Circuit Court and the District Court of Appeal, and the application was denied and the decision of denial duly confirmed. See Miami v. Huttoe (Fla.), 38 So.2d 819, and State ex rel. Williams v. Whitman, 116 Fla. 196, 150 So. 136, 156 So. 705.
In sum, there is no predicate for error in Appellants' contentions respecting who had the burden of proof or the failure of the Authority to make written findings. The Authority based its refusal to grant the application upon the transcript and after hearing counsel, that is to say upon the merits. The evidence was conflicting but there was ample evidence if believed by the Authority to deny the application. It did not go off on the procedural point that Appellants had failed to prove the fill would produce no material adverse effect upon the public interest. The administrative procedure prescribed for the Authority is quite dissimilar from rules governing a civil trial.
*387 In reaching the conclusion that the evidence is sufficient to justify the denial of the application for the bulkhead line and the dredge and fill permit covering the 11.5 acres of submerged land desired by Appellants for the trailer park within the standards laid down by the controlling statutes, notice is taken of the history of events and conditions leading to the passage of the Bulkhead Law, the same being common knowledge. The law was enacted in response to an aroused public interest and alarm concerning the great number, promiscuity and adverse effects of fills already made in coastal offshore waters of the state and the anticipation of even greater filling of this nature in the absence of any statute regulating indiscriminate filling. The Legislature recognized that unregulated and uncontrolled filling of submerged lands threatened the economy of the state and its growing communities, impaired the scenic beauty and utility of our coastal lands and waters and adversely affected the enjoyment and utilization of these areas by our citizens and visitors to a degree inimical to the public welfare.
The evidence submitted by the objectors to the application clearly indicates the proposed fill and the bulkhead line to encompass it are of the character of injurious fills and bulkhead lines which the statute was intended to minimize or prohibit.
In the enactment of F.S. §§ 253.12 to 253.0013, incl., F.S.A., the State Bulkhead Law, the Legislature acted under the state's retained inalienable trust doctrine in submerged lands and navigable waters and under the state's police power.
This Court in Hayes v. Bowman, 91 So.2d 795 (Fla. 1957), speaking through Justice Thornal, presaged the authority of the State to regulate in this area when it said:
"[2] Subject to certain statutory variations which we hereafter point out, it is well settled in Florida that the State holds title to lands under tidal navigable waters and the foreshore thereof (land between high and low water marks). As at common law, this title is held in trust for the people for purposes of navigation, fishing, bathing and similar uses. Such title is not held primarily for purposes of sale or conversion into money. Basically it is trust property and should be devoted to the fulfillment of the purposes of the trust, towit: the service of the people.
"[3] However, consonant with the common law rule, the State may dispose of submerged lands under tidal waters to the extent that such disposition will not interfere with the public's right of navigation, swimming and like uses. Moreover, any person acquiring any such lands from the State must so use the land as not to interfere with the recognized common law riparian rights of upland owners (an unobstructed view, ingress and egress over the foreshore from and to the water) * * *."
Subsequently the Supreme Court in Gies v. Fischer, 146 So.2d 361 (Fla. 1962), speaking through Justice Drew, passed favorably upon the constitutionality of said F.S. § 253.122, F.S.A. There, in a landmark pronouncement the Court approved the constitutionality of this statute as a police regulation and as an exercise of the State's retained power under the inalienable trust doctrine in order to balance and protect public and private interest in submerged lands with such authority to be exercised through joint administrative action of local and state officers.
In City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364; Sharrow v. City of Dania (Fla.), 83 So.2d 274, and Knowles v. Central Allapattae Properties, 145 Fla. 123, 198 So. 819, and in other cases, this Court has said the government through the exercise of the police power may impose reasonable restrictions upon the use of property in the interest of public health, morals, safety and public welfare; and that the possession and enjoyment of rights and property are the subject of the *388 valid exercise of this power. In addition, the retained inalienable trust doctrine is peculiarly susceptible to application to the subject matter involved herein, as provided in the statutes held constitutional in this case. In the light of these principles and on the basis of the full and complete hearing and the evidence adduced therein, I see no abuse of administrative discretion or reason to disturb the administrative denial of the particular bulkhead line and dredge and fill plan proposed and applied for by Appellants, or the judicial confirmation thereof made below.
THOMAS and THORNAL, JJ., concur.
NOTES
[1] 154 So.2d 181 (Fla.App. 1963).
[2] Id., 154 So.2d at 186, 188.
[3] Chapter 31182, § 8(e) Special Acts 1955: "That the Pinellas County Water and Navigation Control Authority * * * shall obtain such engineering or other data and hear such testimony under oath as may be necessary to determine.

"1. The effect of the proposed plan or development on the use of said waters in said county for transportation and recreational or other public purposes and public conveniences.
"2. The effect of the proposed plan or development on the free use of the waterways and navigable waters.
"3. The effect of the proposed plan or development upon erosion control.
"4. The effect of the proposed plan or development upon the flow of water or tidal currents in said county.
"5. The effect of the proposed plan or development upon erosion, shoaling of channels, formation of stagnant pockets likely to collect debris and upon extraordinary storm damage.
"6. The effect of the proposed plan or development upon the natural beauty and recreational advantages of Pinellas county.
"7. The effect of the proposed plan or development upon the conservation of wild life, marine life, and other natural resources.
"8. The effect of the proposed plan or development upon the uplands surrounding or necessarily affected by said plan or development.
"The Board, after public hearing, from said date and testimony, shall make findings of fact and determine whether or not the proposed plan or development will materially affect any of the rights and interests of the public heretofore set out in this section."
[4] 154 So.2d 181, 185 (Fla.App. 2nd 1963).
[5] "The Board, after public hearing, from said data and testimony, shall make findings of fact and determine whether or not the proposed plan or development will materially affect any of the rights and interests of the public heretofore set out in this section. Said findings of fact and said determination shall be reduced to writing and shall be filed with the Clerk of the Board and, when so filed, shall be open to the public."
[6] 154 So.2d 181, 183-184 (Fla.App.2nd 1963).
[7] See Brickell v. Trammell, 77 Fla. 544, 82 So. 221 (1919), (Riparian rights are property rights that may be regulated but not taken without just compensation.); Gibson v. City of Tampa, 135 Fla. 637, 185 So. 319 (1938) (Right to propagate oysters under leases on oyster beds in Tampa Bay constitutes "property"); Hamilton v. Williams, 145 Fla. 697, 200 So. 80 (1941) (Right of a property owner to hunt such wild game as is found upon his land is a vested property right).
[8] In Corneal v. State Plan Board, 95 So.2d 1, 4, 70 A.L.R.2d 845 (Fla. 1957) this court stated the rule as follows: "While the police power is very broad in concept, this legislative power is fenced about by constitutional limitations, and it cannot properly be exercised beyond such reasonable interferences with the liberty of action of individuals as are really necessary to preserve and protect the public health, safety and welfare."
[9] Ibid: "In enacting regulatory measures which protect but do not destroy property, the law need not restrict itself to conditions actually harmful but may require precautions within the whole range of possible danger. * * * But the absolute destruction of property is an extreme exercise of the police power and is justified only within the narrowest limits of actual necessity, unless the state chooses to pay compensation."
[10] At least one member of the Pinellas County Water and Navigation Control Authority, although voting for denial of the permit, recognized possible infringements of rights and stated for the record that "he did hope that if it is possible in the next session of the Legislature there be some addition to the law allowing either the state or the county to condemn privately owned submerged lands in order that the owners can be compensated for the land when there is a negative decision on an application for filling on privately owned submerged lands."
[11] Fla.Laws, 1917, ch. 7304, § 5 at 117:

"Purchaser to have right to bulkhead.  In case any such islands or submerged lands are sold by the trustees according to the provisions of Sections 1061 and 1062, the purchaser shall have the right to bulkhead and fill in same as provided by Section 2460 of these Revised General Statutes, without, however, being required to connect the same with the shore or with the permanent wharf."
[12] Accord, Pembroke v. Pennisular Terminal Co., 108 Fla. 46, 146 So. 249, 258 (1933):

"And, as pointed out in the Deering Case [Deering v. Martin, 95 Fla. 224, 116 So. 54], it was the intent of the statute that it should also be their duty, whether objections were made or not made, not to sell and convey if to do so would `interfere "with the rights granted to riparian owners by the laws of Florida, or would be a serious impediment to navigation or public fisheries."'
"The presumption is that the trustees, being public officials of the state, complied with their duty under the law, and that they correctly ascertained the facts warranting their action. * * * "
[13] F.S. § 253.12(2), F.S.A.
[14] 146 So.2d 361 (Fla. 1962).
[15] See Hayes v. Bowman, 91 So.2d 795, (1957).
[16] 104 So.2d 572, 578 (Fla. 1958).
[17] 70 So.2d 901, 902 (Fla. 1954).
[18] 68 So.2d 889, 890 (Fla. 1953).